58 F.3d 78
 UNITED STATES of America, Plaintiff-Appellee,
v.
Keith Gordon HAM, a/k/a Kirtanananda, a/k/a K. Swami, a/k/a
Kirtanananda Swami Bhaktipada, a/k/a Srila
Bhaktipada, a/k/a Number One, Defendant-Appellant.
 No. 94-5507.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1995.
Decided June 20, 1995.
 
 ARGUED: Nathan Z. Dershowitz, Dershowitz & Eiger, P.C., New York City, for appellant. Michael D. Stein, Asst. U.S. Atty., U.S. Dept. of Justice, Washington, DC, for appellee. ON BRIEF: Amy Adelson, Dershowitz & Eiger, P.C., New York City, for appellant. William D. Wilmoth, U.S. Atty. and Nina Goodman, U.S. Dept. of Justice, Washington, DC, for appellee.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 Affirmed by published opinion. Judge RUSSELL wrote the opinion, in which Judge WIDENER and Judge HALL joined.
 OPINION
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This appeal raises the issue of whether the Double Jeopardy Clause bars retrial of the forfeiture count of a RICO indictment where the district court, at the original trial, failed to instruct the jury to consider a required issue and enter a special verdict pursuant to Rule 31(e) of the Federal Rules of Criminal Procedure. Furthermore, this Court must also decide whether the Double Jeopardy Clause bars the retrial of certain RICO predicate acts where the original jury did not indicate on the verdict form that it unanimously found the defendant guilty of those predicate acts. We hold that double jeopardy does not apply in either instance.
 
 I.
 
 2
 Keith Gordon Ham, also known as Kirtanananda Swami Bhaktipada ("Swami"), is the spiritual leader of the New Vrindaban Hare Krishna community in West Virginia. In May 1990, a federal grand jury returned an indictment charging Swami with three counts of violating the RICO statute (18 U.S.C. Sec. 1962), six counts of mail fraud, and two counts regarding a related murder.[1] The indictment also included a separate forfeiture count in which the government sought forfeiture of all of the property owned by the New Vrindaban community. After a trial, the jury convicted Swami on the RICO and mail fraud counts but failed to reach a verdict on the murder counts.
 
 A. The Forfeiture Count
 
 3
 Rule 31(e) of the Federal Rules of Criminal Procedure requires in forfeiture trials that "a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any." The jury at Swami's trial never rendered a special verdict on the extent of Swami's interest or property subject to forfeiture.
 
 
 4
 Before the district court charged the jury at trial, Swami's defense counsel requested that the court not submit the forfeiture count to the jury until the jury returned a guilty verdict on any of the RICO counts. The district court agreed with the suggestion and ruled that the jury should decide only whether racketeering proceeds went into the properties subject to forfeiture. The district court did not have the jury decide the extent of Swami's interest or property subject to forfeiture; the court postponed consideration of that issue until it was clear that the jury would convict on the RICO counts.
 
 
 5
 In response to the district court's ruling, Swami's attorney drafted the following interrogatory to be answered if the jury found Swami guilty of any of the RICO counts:
 
 
 6
 Did the defendant acquire an interest in, establish, and/or operate New Vrindaban Community with income received from racketeering acts as detailed in [the RICO counts]?
 
 
 7
 The jury answered this interrogatory in the affirmative, but the court never held an evidentiary hearing on the extent of Swami's interest or property subject to forfeiture. The district court discharged the jury without its having rendered a special verdict as required by Rule 31(e).
 
 
 8
 At sentencing, Swami raised the government's failure to obtain a special verdict on the extent of Swami's interest in the property subject to forfeiture. Although the government attempted to shift the burden of securing the special verdict to the defendant, the district court held that any failure to comply with Rule 31(e) "is the court's fault, not the defendant's." Because the jury had not returned a special verdict under Rule 31(e), the district court did not order the forfeiture of any specific property but only entered a general order that "the defendant Swami shall forfeit to the United States all of his interest in all of the real estate identified by the United States in the forfeiture count of the indictment...." Nonetheless, the district court concluded that a new jury could make the requisite findings under Rule 31(e) and advised the prosecutor to "set it down for a jury."
 
 B. The Predicate Acts
 
 9
 The verdict form that was submitted to the jury required, for most of the counts, only that the jury decide whether the defendant was guilty or not guilty. For the RICO conspiracy count (Count I) and one of the substantive RICO counts (Count II), however, the verdict form also stated the following inquiry:
 
 
 10
 IF YOU FIND THE DEFENDANT GUILTY OF [the count] PLEASE CHECK THE PARTICULAR PREDICATE ACTS YOU HAVE UNANIMOUSLY CONCLUDED HAVE BEEN PROVEN BY THE UNITED STATES WITH RESPECT TO DEFENDANT SWAMI.
 
 
 11
 1) STEPHEN BRYANT MURDER __________
 2) CHARLES ST. DENNIS MURDER __________
 3) DEVON WHEELER KIDNAPPING __________
 4) MAIL FRAUD: FUNDRAISING __________
 5) MAIL FRAUD: ALLSTATE INSURANCE __________
 
 
 
 The jury found Swami guilty of the RICO conspiracy count (Count I) and checked all of the predicate acts except the Stephen Bryant murder. The jury also found Swami guilty of the RICO substantive count (Count II) but did not check either the Stephen Bryant murder or the Charles St. Dennis murder as predicate acts.
 C. Post-trial Proceedings
 Swami appealed to this Court, and we vacated Swami's convictions and remanded for a new trial.[2] United States v. Ham, 998 F.2d 1247 (4th Cir.1993). This Court concluded that the district court erred in admitting evidence of child molestation, homosexuality, and mistreatment of women because the danger of unfair prejudice outweighed the probative value of the evidence.
 On remand to the district court, Swami moved, inter alia, to dismiss the forfeiture count and the two predicate acts that the jury did not check on the verdict form. Swami argued that the Double Jeopardy Clause of the Fifth Amendment bars retrial of the forfeiture count because the district court failed to have the jury render a special verdict under Rule 31(e). Swami also argued that the original jury, by failing to check several of the predicate acts on the verdict form, implicitly acquitted him of those acts; therefore, Swami contended that double jeopardy bars the government from retrying him on those predicate acts.
 The district court denied both motions to dismiss. With regard to the forfeiture count, the district court concluded that the jury's affirmative answer to the special interrogatory on the verdict form was sufficient to comply with the requirements of Rule 31(e) even though it did not specify the extent of Swami's interest or property subject to forfeiture. With regard to the predicate acts, the district court concluded that the failure to check a particular predicate act did not constitute an implicit acquittal of that act. Swami now appeals to this Court. We affirm the district court's denial of the motions to dismiss, but our reasoning differs with respect to the forfeiture count.
 II.
 The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause unequivocally prohibits the State from retrying a defendant after an acquittal. Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978). As the Supreme Court has explained:
 The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a constant state of anxiety and insecurity as well as enhancing the possibility that even though innocent he may be found guilty.
 Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). Thus, a verdict of acquittal is final and a bar to all subsequent prosecution for the same offense, even where the acquittal was based upon an egregiously erroneous foundation. Washington, 434 U.S. at 503, 98 S.Ct. at 829.
 However, a verdict of guilt or innocence is not required for the double jeopardy bar to apply. The Double Jeopardy Clause also protects a defendant's right to have his trial completed by the particular tribunal he or she has chosen. Id. Jeopardy attaches once a defendant is put to trial before a jury, and the Double Jeopardy Clause generally bars retrial if the jury is discharged without the defendant's consent. Green, 355 U.S. at 188, 78 S.Ct. at 224. "This prevents a prosecutor or judge from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury might not convict." Id. Thus, the government is entitled to only "one fair opportunity to offer whatever proof it [can] assemble." Burks v. United States, 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). If the government cannot meet its burden of proof at the first trial, the Double Jeopardy Clause prevents the court from withholding the issue from the jury and allowing the government to reprosecute before a more favorable jury.
 Nonetheless, the Double Jeopardy Clause does not automatically bar retrial when a criminal proceeding is terminated without a final resolution on the merits of the charges. As the Supreme Court has explained:
 Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.
 Washington, 434 U.S. at 505, 98 S.Ct. at 830. The Supreme Court has long since formulated the following rules for determining whether double jeopardy bars reprosecution after a mistrial. If a judge declares a mistrial over the defendant's objection or without the defendant's consent, the defendant cannot be retried unless there was "manifest necessity" for the termination of the first trial. Arizona, 434 U.S. at 509-10, 98 S.Ct. at 832-33; Green, 355 U.S. at 188, 78 S.Ct. at 223-24; United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); United States v. Council, 973 F.2d 251, 255 (4th Cir.1992). However, if the defendant moved for mistrial or otherwise consents to the mistrial, the defendant can be reprosecuted unless he can demonstrate that the prosecutor or judge provoked the mistrial. Oregon v. Kennedy, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089-90, 72 L.Ed.2d 416 (1982).
 In this case, the district court did not declare a mistrial; instead, the district court completed most of the trial but failed to try a discrete issue required for conviction of the forfeiture count. Under Rule 31(e), a district court cannot enter an order of forfeiture unless a jury has entered a special verdict regarding the extent of the defendant's interest or property subject to forfeiture. The district court below never held an evidentiary hearing on the extent of Swami's interest and never directed the jury to enter a special verdict on the issue. The jury issued a verdict on all the issues presented to it, thus completing those portions of the trial. But, the trial never even began on the Rule 31(e) forfeiture issue.
 We hold that the double jeopardy rules that apply in mistrial situations also apply when a court fails to try a discrete portion of the case before the original jury. If the failure to try a discrete issue occurs over the defendant's objection or without the defendant's consent, the court cannot try that issue before a second jury unless there was "manifest necessity" for withholding it from the original jury. On the other hand, if the failure to try the discrete issue occurs at the defendant's request or otherwise with the defendant's consent, the court can try that issue before a second jury unless the defendant can demonstrate that the prosecutor or judge improperly provoked the defendant's request or consent.
 Swami did not expressly consent to the dismissal of the jury before it decided the Rule 31(e) forfeiture issue. Nonetheless, Swami's consent may be implied from his failure to object to the district court's dismissal of the jury. In mistrial situations, a number of circuits have held that a defendant impliedly consents to a mistrial if the defendant had an opportunity to object to the mistrial but fails to do so. See United States v. DiPietro, 936 F.2d 6, 9-10 (1st Cir.1991) (implied consent where defendant did not object to mistrial even though defendant should have anticipated declaration of mistrial and where trial judge remained in courtroom afterward to discuss case with attorneys); Camden v. Circuit Court of Second Judicial Cir., Crawford County, Ill., 892 F.2d 610, 614-18 (7th Cir.1989) (implied consent where defendant did not object to mistrial although "[d]efense counsel should have anticipated the possibility of a mistrial and been prepared to object or suggest more acceptable alternatives when the trial judge announced his ruling"), cert. denied, 495 U.S. 921, 110 S.Ct. 1954, 109 L.Ed.2d 316 (1990); United States v. Puleo, 817 F.2d 702, 705 (11th Cir.) (implied consent where trial judge expressed clear intent to declare mistrial and defense counsel had opportunity to object but did not), cert. denied, 484 U.S. 978, 108 S.Ct. 491, 98 L.Ed.2d 489 (1987); United States v. Smith, 621 F.2d 350, 352 (9th Cir.1980) (implied consent where defendant did not object after declaration of mistrial although, before dismissal of jury, court and attorneys discussed instructions to jury upon dismissal and schedule for retrial), cert. denied, 449 U.S. 1087, 101 S.Ct. 877, 66 L.Ed.2d 813 (1981); United States v. Goldstein, 479 F.2d 1061, 1067 (2d Cir.) ("Consent need not be express, but may be implied from the totality of circumstances attendant on a declaration of mistrial."), cert. denied, 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973). But see Glover v. McMackin, 950 F.2d 1236 (6th Cir.1991) (holding that consent should be implied "only where the circumstances positively indicate a defendant's willingness to acquiesce in the [mistrial] order"); United States v. White, 914 F.2d 747, 753 (6th Cir.1990) (same).[3] However, a defendant's failure to object does not constitute implied consent if he had no opportunity to object. United States v. Jorn, 400 U.S. 470, 487, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971) (trial judge did not exercise sound discretion when he abruptly discharged jury, offering no opportunity for defendant to object to mistrial); United States v. Bates, 917 F.2d 388, 393 (9th Cir.1990) (no implied consent where defense counsel, immediately after judge declared mistrial, requested to talk to judge outside jury's presence, but judge did not grant request); Lovinger v. Circuit Court of the 19th Judicial Circuit, Lake County, Ill., 845 F.2d 739 (7th Cir.) (no implied consent where judge, immediately after declaring mistrial, left courtroom and "was gone before the defense had any reasonable opportunity to consider the import of his statement and act upon it"), cert. denied, 488 U.S. 851, 109 S.Ct. 136, 102 L.Ed.2d 108 (1988).
 Similarly, if a defendant has an opportunity to object to the trial court's dismissal of the jury before it decides a discrete portion of the case, but fails to do so, the defendant impliedly consents to the jury's dismissal and cannot raise a double jeopardy defense to further prosecution before a second jury. The record in this case shows that, after the clerk read the verdict and the defendants polled the jury, the district judge thanked the members of the jury for their time and effort, apologized for their inconvenience, and wished them a Happy Easter. With these short remarks, the district judge was clearly dismissing the jury. Swami's counsel could have interrupted the judge before he discharged the jury and reminded him that the jury had not completed the forfeiture phase of the trial. If Swami had wanted the original jury to decide the Rule 31(e) forfeiture issue, he should have informed the court of this desire before it dismissed the jury.[4]
 Although Swami had a right to have the original jury decide the Rule 31(e) forfeiture issue, he could have asserted this right and prevented the district court from prematurely dismissing the jury. He did not do so. Swami cannot avoid a second trial on the forfeiture count on double jeopardy grounds and thereby profit from his failure to act. The actions of Swami's attorneys suggest that the double jeopardy argument was a mere afterthought that one of Swami's attorneys conjured up long after the district court dismissed the original jury. Cf. Camden, 892 F.2d at 618 (concluding that defendant's double jeopardy argument was "merely an afterthought that took form long after the first trial ended in a mistrial").
 We conclude that Swami impliedly consented to the district court's dismissal of the jury and, therefore, that the district court can try the Rule 31(e) forfeiture issue before a second jury without a showing of manifest necessity. We hold that double jeopardy does not bar retrial of the forfeiture count of Swami's indictment.
 III.
 We turn now to Swami's contention that double jeopardy bars retrial of the RICO predicate acts that the original jury did not check on the verdict form. Swami argues that the original jury had an opportunity to render a verdict on the Stephen Bryant and Charles St. Dennis murders,[5] and that its failure to check those predicate acts on the verdict form should be treated as an implied acquittal.
 Swami finds support for his argument in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). In that case, Green was tried for both first and second degree murder; the jury convicted Green of second degree murder, but the verdict was silent on the first degree murder charge. Id. at 186, 78 S.Ct. at 223. Green successfully appealed his second degree murder conviction, and on remand for a new trial, Green argued that the Double Jeopardy Clause barred retrial of the first degree murder charge. The Supreme Court concluded that the "second trial for first degree murder placed Green in jeopardy twice for the same offense in violation of the Constitution." Id. at 190, 78 S.Ct. at 225.
 The Supreme Court reasoned that Green had been forced to run the gauntlet once on the charge of first degree murder and that the jury had refused to convict him. Id. The jury had the choice between convicting him on first or second degree murder, and it chose the latter. Id. The Supreme Court regarded the jury's verdict as an implied acquittal on the first degree murder charge. Id. It relied on the fact that the jury had been dismissed without Green's consent and without its having returned an express verdict on the first degree murder charge. Id. at 191, 78 S.Ct. at 225-26. The Supreme Court reasoned that the jury "was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so." Id. Therefore, the Court concluded that "Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense." Id.
 More generally, the Supreme Court held in Green that "the double jeopardy clause precludes a prisoner's retrial for a greater offense after reversal of his conviction of a lesser included offense." United States v. Johnson, 537 F.2d 1170, 1174 (4th Cir.1976); see also United States v. Tateo, 377 U.S. 463, 465 n. 1, 84 S.Ct. 1587, 1589 n. 1, 12 L.Ed.2d 448 (1964) (Green "holds only that when one is convicted of a lesser offense included in that charged in the original indictment, he can be retried only for the offense of which he was convicted rather than that with which he was originally charged.").
 Swami argues that he has been forced to run the gauntlet on all five predicate acts, and that the jury did not convict him on the predicate acts regarding the Bryant and St. Dennis murders. Swami urges this Court to conclude, like the Green Court, that the failure to return a verdict on those predicate acts constitutes an implied acquittal, thus barring a second prosecution on those acts. Swami also argues that, although he was prosecuted on RICO charges with five predicate acts, he was convicted of lesser included offenses, namely a RICO conspiracy conviction with four predicate acts and a substantive RICO conviction with three predicate acts. Having successfully appealed these RICO convictions, Swami contends that he can be retried only on the lesser included offenses.
 We do not agree. The jury's failure to check a predicate act does not constitute an implied acquittal of that act. The verdict form required the jury to "check the particular predicate acts you have unanimously concluded have been proven by the United States with respect to defendant Swami." The failure to check a predicate act may signify either that the jury unanimously concluded that Swami did not commit that act, or that the jury could not agree on a verdict for that act.
 A jury's failure to decide an issue will be treated as an implied acquittal only where the jury's verdict necessarily resolves an issue in the defendant's favor. See Schiro v. Farley, --- U.S. ----, ----, 114 S.Ct. 783, 792, 127 L.Ed.2d 47 (1994) ("The failure to return a verdict does not have collateral estoppel effect ... unless the record establishes that the issue was actually and necessarily decided in the defendant's favor."). In Green, for instance, the failure to issue a verdict on the first degree murder charge was treated as an implied acquittal because "Green's conviction of second-degree murder established the existence of a fact (the state of mind required for that offense) that was inconsistent with his being guilty of first-degree murder...." Kennedy v. Washington, 986 F.2d 1129, 1134 (7th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 876, 127 L.Ed.2d 73 (1994). Nothing in the jury's verdict in Swami's case establishes a fact inconsistent with a finding of guilt on the predicate acts.
 We conclude that the Double Jeopardy Clause does not bar retrial of the predicate acts regarding the Stephen Bryant murder and the Charles St. Dennis murder.
 IV.
 For the reasons stated herein, we affirm the judgment of the district court.
 AFFIRMED.
 
 
 [1]
 More specifically, the indictment charged Swami with conspiring to conduct and participate in the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. Sec. 1962(d) (Count I), conducting the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. Sec. 1962(c) (Count II), investing income derived from a pattern of racketeering activity in the operation of an enterprise (Count III), two counts of conspiring to commit mail fraud in violation of 18 U.S.C. Sec. 371 (Counts VI and VIII), four counts of substantive mail fraud in violation of 18 U.S.C. Sec. 1341 (Counts VII, IX, X, and XI), one count of conspiring to murder in violation of 18 U.S.C. Sec. 371 (Count IV), and one count of aiding and abetting to commit murder in violation of 18 U.S.C. Sec. 1958 (Count V)
 Terry Sheldon was a co-defendant in the RICO conspiracy count, the substantive RICO counts, the conspiracy to commit murder count, and the aiding and abetting to commit murder count. Terry Sheldon and Steven Fitzpatrick were co-defendants in one of the mail fraud conspiracy counts and one of the substantive mail fraud counts.
 
 
 [2]
 We also vacated the convictions of Terry Sheldon and reversed the convictions of Steven Fitzpatrick
 
 
 [3]
 Although the Sixth Circuit does not follow the majority view, the First Circuit has concluded that the Sixth Circuit has actually not set a different standard. "Even where courts have held that the failure to object did not foreclose a good double jeopardy plea, they have generally done so because there was no opportunity to object." DiPietro, 936 F.2d at 10. The First Circuit noted that, in United States v. White, 914 F.2d 747 (6th Cir.1990), the defendant's failure to object to the mistrial did not waive the double jeopardy bar to a new trial because the defense had no time to object. DiPietro, 936 F.2d at 10-11
 
 
 [4]
 We note that Swami probably had strategic reasons for not reminding the court. It is unlikely that Swami wanted the same jury that had just convicted him of nine of the eleven counts also to decide the remaining forfeiture issue
 
 
 [5]
 The jury did check the Charles St. Dennis murder as a predicate act for the RICO conspiracy count (Count I). It did not check it as a predicate act for the substantive RICO count (Count II). Swami argues that double jeopardy bars retrial of the St. Dennis murder only as to the substantive RICO count