UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

WILLIAM J. STREETT; SHARON L.
STREETT; JAMES G. SPRINKEL,
          *Defendants-Appellants.*

No. 01-4173

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
James P. Jones, District Judge.
(CR-00-27)

Argued: September 27, 2001

Decided: October 18, 2001

Before WILKINSON, Chief Judge, and LUTTIG and
MICHAEL, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Edward Scott Austin, GENTRY, LOCKE, RAKES &
MOORE, Roanoke, Virginia; Paul Lawrence Knight, Washington,
D.C., for Appellants. Rick A. Mountcastle, Assistant United States
Attorney, Abingdon, Virginia, for Appellee. **ON BRIEF:** Guy M.
Harbert, III, GENTRY, LOCKE, RAKES & MOORE, Roanoke, Vir-
ginia, for Appellant Sprinkel; John J. McDermott, HALL, ESTILL,

HARDWICK, GABLE, GOLDEN & NELSON, P.C., Washington, D.C., for Appellant William Streett; John S. Hart, Jr., JOHN S. HART, JR., P.C., Harrisonburg, Virginia, for Appellant Sharon Streett. Ruth E. Plagenhoef, United States Attorney, Abingdon, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Defendants William J. Streett, Sharon L. Streett, and James G. Sprinkel appeal the district court's order denying their joint motion to dismiss the tax charges against them. They contend that the Double Jeopardy Clause bars a retrial after a hung jury under the circumstances of this case. Because the defendants acquiesced in the mistrial declaration, and because the court did not abuse its discretion in finding that a mistrial was required by manifest necessity, we affirm the order of the district court.

### I.

On March 8, 2000, Defendants Dr. William J. Streett, his wife Sharon L. Streett, and their accountant, James G. Sprinkel, were charged with conspiracy to obstruct the Internal Revenue Service ("IRS") in the ascertainment and collection of federal income taxes, in violation of 18 U.S.C. § 371. The Streetts were also charged with three counts of making a false tax return, in violation of 26 U.S.C. § 7206(1). Mrs. Streett pleaded guilty to this charge before trial.

The defendants' jury trial began on November 6, 2000 and lasted two and one-half days. The case was submitted to the jury at noon on November 9, 2000. After approximately three hours of deliberation, the jury told the court that it could not reach a unanimous verdict on

any of the charges. After the court returned the jurors to the jury room to consider whether "there are questions or other items of evidence that the jury has not seen that you think might be of assistance," the court asked the government whether it wanted the court to declare a mistrial. The government responded that it would first like to hear "whether the jurors have any additional questions or evidence they want to look at and see what happens then." The court then asked defense counsel whether he had anything to add. Defense counsel replied, "Not at this time, Your Honor."

After the jury returned and reported that no additional assistance from the court would help it to reach a unanimous decision, the court asked the government what it wanted to do. The government responded, "I would say we need a mistrial, Your Honor." The court next asked defense counsel whether he wished to add anything. Defense counsel replied, "No, sir." The court then declared a mistrial, advising the jury that it was being discharged because of its inability to reach a unanimous decision. After returning the jurors to the jury room, the court asked if there was any further matter that needed to be taken up. In response, defense counsel requested postponement of Mrs. Streett's meeting with the probation office.

On December 13, 2000, a grand jury returned a second indictment against Sprinkel, charging him with two counts of making a materially false statement or writing to the IRS, in violation of 18 U.S.C. § 1001. The false statements charged in the second indictment involved the same conduct charged as overt acts in the conspiracy count of the original indictment. On December 15, the government successfully moved to consolidate both indictments.

On February 6, 2001, the defendants filed a joint motion to dismiss the indictments for violations of the Double Jeopardy Clause. The district court denied the motion on February 26, 2001, finding that the defendants had acquiesced in the declaration of a mistrial. The court also determined that there was a manifest necessity for a mistrial because the jury was reasonably perceived to be hopelessly deadlocked "after a relatively short trial on issues of comparative simplicity." Defendants appeal.

## II.

### A.

We review de novo the legal questions raised by double jeopardy claims. *United States v. Imngren*, 98 F.3d 811, 813 (4th Cir. 1996). In addition, we must accept the district court's factual findings unless they are clearly erroneous. *United States v. Johnson*, 55 F.3d 976, 978 (4th Cir. 1995). Finally, the trial court has "broad discretion" in determining whether manifest necessity requires a mistrial declaration. *Illinois v. Somerville*, 410 U.S. 458, 462 (1973). Thus, we review that determination for abuse of discretion. *United States v. Sloan*, 36 F.3d 386, 393 (4th Cir. 1994). However, strict scrutiny is appropriate "when there is reason to believe that the prosecutor is using the superior resources of the State to . . . achieve a tactical advantage over the accused." *Arizona v. Washington*, 434 U.S. 497, 508 (1978).

### B.

The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Clause allows for a retrial following a mistrial provided that, "taking all the circumstances into consideration, there is a manifest necessity" for declaring a mistrial. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824). It has long been established that the failure of a jury to agree on a verdict is an instance of "manifest necessity." *Id.* at 579-80; *Richardson v. United States*, 468 U.S. 317, 323-24 (1984).

However, the Double Jeopardy Clause "bars retrials where bad-faith conduct by judge or prosecutor . . . threatens the harassment of an accused by . . . declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict the defendant." *Washington*, 434 U.S. at 508 (internal quotation omitted). Nevertheless, if the defendant has an opportunity to object to the trial court's declaration of a mistrial but fails to do so, the defendant impliedly consents to the mistrial and cannot raise a double jeopardy defense to further prosecution before a second jury. *See United States v. Ndame*, 87 F.3d 114, 115 (4th Cir. 1996); *United States v. Ham*, 58 F.3d 78, 83-84 (4th Cir. 1995); *United States v. Ellis*, 646 F.2d 132, 135 (4th Cir. 1981).

### III.

### A.

The defendants argue that the Double Jeopardy Clause bars reprosecution of this case because the government requested a mistrial for the purpose of gaining a tactical advantage in a future retrial, thereby triggering strict scrutiny under *Washington*. 434 U.S. at 508. The defendants maintain that the tactical advantage was a second indictment against Sprinkel. The defendants point out that during trial, it was never denied that Sprinkel made the alleged false statements; rather, his defense was that the statements were not in furtherance of any conspiracy. According to the defendants, if Sprinkel continued with this same defense at retrial to avoid conviction on the one conspiracy count, the result might well be two convictions under the new indictment for making false statements. Moreover, the defendants contend that by effectively preventing Sprinkel from presenting a viable defense to the conspiracy charge, the government will more easily be able to convict the Streetts of this same charge because a conspiracy requires at least two people. The defendants submit that the short time between the mistrial declaration and the second indictment is circumstantial evidence of the government's illicit intent.

In addition, the defendants argue that there was no manifest necessity for a mistrial because this was a complex case in which the jury had deliberated for only a short time and was not given an *Allen* charge. *See Allen v. United States*, 164 U.S. 492 (1896). The defendants further maintain that they did not consent to a mistrial.

### B.

There are two significant problems with the defendants' position. Procedurally, there is no doubt that the defendants were given an opportunity to object to the trial court's declaration of a mistrial but failed to do so. In fact, the court twice gave defense counsel the opportunity to object when it was considering declaring a mistrial. Defense counsel twice indicated that it had nothing to say. In addition, after the court advised the jury that it was being discharged because of its inability to reach a unanimous decision, the court gave defense counsel yet another opportunity to object to the mistrial, ask-

ing if there was any further matter that needed to be taken up. Again, defense counsel did not object to the mistrial declaration. Indeed, none of the defendants made a double jeopardy challenge until approximately three months after the end of the first trial.

At a minimum, the defendants failed to object to the mistrial declaration. At a maximum, they affirmatively acquiesced. Either way, they cannot now raise a double jeopardy defense to further prosecution before a second jury. *See Ndame*, 87 F.3d at 115; *Ham*, 58 F.3d at 83-84; *Ellis*, 646 F.2d at 135.

Even if the defendants had not acquiesced in the mistrial declaration, their claim fails in substance. The district court was not too quick on the trigger here. The court did not automatically declare a mistrial. Rather, when the jury informed the court that it was unable to reach a unanimous decision on any of the charges, the court asked the jury to return to the jury room to consider whether any additional assistance would aid it in its decision, and then consulted with both the government and defense counsel. It was only after the jury indicated that no additional help would allow it to reach a unanimous decision that the court declared a mistrial. The district court is in the best position to determine whether further deliberation would have been fruitful. It is very difficult for us to replicate its vantage point. Our role is limited to deciding whether the court abused its discretion. *See Sloan*, 36 F.3d at 393. It did not.

As for the defendants' contention that strict scrutiny is the correct standard of review because the government had an illicit purpose in seeking the mistrial declaration, there have been no findings or suggestions by the district court that the prosecutor acted in bad faith. And there is nothing in the record that would cause us to conclude that the court was clearly erroneous in assessing the government's intent. *See Johnson*, 55 F.3d at 978. It was the prosecutor who stated that he wanted to hear whether the jurors had any additional questions or wanted to examine any other evidence before the court declared a mistrial. It was only after the jurors again indicated that they could not reach a unanimous decision that the government requested a mistrial.

Moreover, the defendants' "tactical advantage" theory also rings hollow in view of their failure to object when the government ulti-

mately sought a mistrial. As we found in *Ham*, defense counsel's actions "suggest that the double jeopardy argument was a mere afterthought . . . conjured up long after the district court dismissed the original jury." 58 F.3d at 84. Strict scrutiny is thus inappropriate in this case. *See Washington*, 434 U.S. at 508.

## IV.

For the foregoing reasons, the order of the district court is

*AFFIRMED*.